UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAUREANO CALDERON-HERNANDEZ,

        Petitioner,

v.                                            CASE NO. 06-CV-11665
                                              HONORABLE BERNARD A. FRIEDMAN

JAN TROMBLEY,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO
PROCEED ON APPEAL IN FORMA PAUPERIS**

**I.    Introduction**

Laureano Calderon-Hernandez ("Petitioner"), a Michigan prisoner, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of second-degree murder following a jury trial in the Wayne County Circuit Court in 2003 and was sentenced to 12 to 20 years imprisonment. In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the invocation of his right to remain silent, and prosecutorial misconduct. For the reasons stated below, the Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

**II.    Facts and Procedural History**

Petitioner's conviction arises from the stabbing death of Jose "Rolando" Bardales during a dispute at Rolando's residence in Detroit, Michigan on December 30, 2002. Petitioner was

1

charged with first-degree premeditated murder along with his older brother and co-defendant Mercedes Calderon-Hernandez. The defendants were tried in a joint trial.

At trial, Maria Delacruz Navarez testified that after she was in the basement of the home when she heard what sounded like a fight upstairs. Rolando then came downstairs where he lived and got on the telephone. She asked Rolando what had happened upstairs, but he did not answer. As Rolando was on the phone, she heard people pushing on the basement door, trying to open it. She also heard the voices of Petitioner, Mercedes, and another man outside the door. While Rolando was still on the phone, Petitioner and Mercedes came through a door into the basement. Petitioner had a knife. She told Rolando that they were coming and Rolando arose from the bed where they had been sitting. Petitioner then started cutting Rolando while Mercedes punched Rolando. She screamed for help and Yuner Gutierez came down and tried to separate Petitioner and Rolando. Rolando fell down and Gutierez took the knife away from Petitioner. While Rolando was on the floor, Mercedes kicked him and pulled him near the stairs. Mercedes then went upstairs. Petitioner remained downstairs and kept her from using the telephone. She calmed down so that Petitioner would go upstairs.

Yuner Gutierez testified that he was visiting with several friends at the home on the night of the incident. While they were upstairs in the living room, Petitioner put his foot on a table. Rolando came up from the basement and told Petitioner to remove his foot from the table. When Petitioner did not comply, Rolando punched Petitioner in the face and the two began to fight. The co-defendant stepped between the men and Rolando went to the basement and closed the door. Petitioner tried to open the basement door. He and the co-defendant then went outside. Gutierez stated that thee basement had a second, outdoor entrance. Gutierez subsequently heard

noises coming from the basement and heard Rolando's wife yelling for help. He went into the basement and saw Petitioner and Rolando fighting for control of a knife. When Rolando fell to the floor, Gutierez took the knife from Petitioner and put it behind a microwave oven. He saw that Rolando was injured and called an ambulance.

Additional witnesses who were at the residence at the time of the fight also testified at trial, but did not provide further significant information as to what transpired that evening.

Chief Wayne County Medical Examiner Carl Schmidt testified that the victim died from three stab wounds. Two of the stab wounds were on the right chest and the other was on the left chest. The stab wounds to the right chest penetrated the chest cavity and one of those wounds injured the right lung. The stab wound to the left chest penetrated the chest wall and the diaphragm and injured the left kidney and the aorta. The victim also had incised wounds on the backs of his forearms and the palm of this right hand. The wounds to the forearms were the type of wounds caused by a person raising up his arms to defend himself. The wounds to the right hand palm wounds were the type caused by a person trying to hold onto the blade of a knife to prevent being stabbed in a vital area.

Several police officers also testified at trial. Detroit Police Officer Daniel Goebel testified that he and his partner were dispatched to the scene. As they approached the house, he looked in the basement window and saw a Hispanic male with no shirt on lying on his back with an open wound to the left side of his chest. He and his partner were admitted into the house by Yuner Gutierez who told them that his friend had been stabbed and that he was in the basement. When he asked if the perpetrators were still in the house, Gutierez pointed to the back of the house. The officers proceeded to that area and found Petitioner hiding in the corner of a small

bedroom.

Detroit Police Officer Moises Jiminez testified that he spoke with witnesses on the scene and observed that both defendants had blood on their hands and clothes at the time of their arrest. Officer Jiminez also interviewed the defendants at the police station. During a brief hearing outside the jury's presence, Officer Jiminez testified about Petitioner's interrogation. He stated that Petitioner was advised of his *Miranda* rights and signed an appropriate form. Petitioner then proceeded to answer some of the officer's questions, but stated that he did not want to answer certain other questions at that time. The trial court concluded that Petitioner did not unequivocally invoke his right to silence and ruled that his police statement was admissible.

Petitioner testified in his own defense at trial. He testified that Rolando punched him in the mouth and knocked him over he when he failed to remove his foot from a table in the living room. Petitioner explained that this upset him because the face is sacred in his Honduran culture. He got up to fight back and Rolando ran into the basement. He chased Rolando into the basement unarmed and his brother followed him. In the basement, Rolando was armed with a knife and the two struggled. Rolando stabbed at him, cutting his hands. Petitioner tried to push the knife away. During the struggle, Rolando cut himself several times. He eventually lost his strength, released the knife, and fell to the floor. Petitioner went back upstairs where he washed and bandaged his hands. His police statement was used to impeach his testimony.

At the close of trial, the jury convicted Petitioner (and his co-defendant) of second-degree murder. The trial court subsequently sentenced Petitioner to 12 to 20 years imprisonment.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the same claims presented in his habeas petition. The Michigan Court of

4

Appeals affirmed his convictions. *See People v. Calderon-Hernandez*, No. 250230, 2004 WL 2881765 (Mich. Ct. App. Dec. 14, 2004). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Calderon-Hernandez*, 474 Mich. 869, 703 N.W.2d 810 (2005).

Petitioner thereafter filed the present petition for writ of habeas corpus asserting the following claims:

> I. The evidence of both first-degree premeditated murder and second-degree murder was insufficient. His conviction is a violation of due process of law.
>
> II. Where Petitioner invoked his *Miranda* rights by stating that he did not wish to discuss matters pertaining to his involvement in the death of the decedent and because the officer, by continuing to question him, failed to "scrupulously honor" that invocation, the admission of his statement violated his Fifth Amendment right.
>
> III. The prosecutor violated his state and federal constitutional due process right to a fair trial, and usurped the function of the jury to be sole judge of the evidence, when she engaged in misconduct by vouching for the credibility of and appealing for sympathy for the decedent's spouse and by disparaging Petitioner.

Respondent has filed an answer to the petition asserting that it should be denied because the claims lack merit and/or are barred by procedural default. Petitioner has filed a reply to that answer.

### III. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether

the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.   Analysis**

   A.   Insufficient Evidence/Compromise Verdict Claims

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his second-degree murder conviction and that it was a compromise verdict since there was insufficient evidence to warrant a first-degree murder charge. Respondent contends that these claims lack merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on

7

whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Because a claim of insufficiency of the evidence presents a mixed question of law and fact, *Huynh v. King*, 95 F.3d 1052, 1059 (11th Cir. 1996); *Maes v. Thomas,* 46 F.3d 979, 988 (10th Cir. 1995), this Court must determine whether the state court's application of the *Jackson* standard was reasonable.

Under Michigan law, the common law crime of murder is defined as second-degree murder and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. To establish second-degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish that the defendant had: (1) the intent to kill; (2) the intent to commit great bodily harm; or (3) the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304 (1980).

Applying the *Jackson* standard, the Michigan Court of Appeals determined that there was sufficient evidence to support Petitioner's second-degree murder conviction, stating in relevant part:

> Viewing the evidence in a light most favorable to the prosecution, decedent punched defendant in the face and then retreated to the basement and secured the door. Decedent phoned 911 for help while defendant and his brother tried to enter the basement. At some point defendant got in and stabbed decedent to death with a kitchen knife. Defendant testified at trial that he followed decedent into the basement to continue the fight because he believed his face was "sacred" and that no one should punch it. Although defendant testified that decedent was the one with the knife, the jury was free to disbelieve that testimony, particularly

> in light of other testimony that decedent was unarmed and evidence of three deep stab wounds to decedent's chest and defensive wounds on decedent's hands and forearms. The circumstantial evidence and reasonable inferences here were sufficient to support both the charge of first-degree murder and defendant's conviction for second-degree murder.

*Calderon-Hernandez*, 2004 WL 250230 at *1. This determination is consistent with *Jackson* and constitutes a reasonable application thereof. Petitioner's use of a knife, his conduct in following the victim to the basement and barging into his room, the victim's stab wounds and defensive wounds, and the testimony of the victim's spouse provided sufficient evidence for the jury to conclude beyond a reasonable doubt that Petitioner acted with the requisite intent to support a second-degree murder conviction. It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. The Michigan Court of Appeals' decision in this regard was reasonable. Habeas relief is not warranted on this claim.

Petitioner relatedly claims that the conviction constituted an improper compromise verdict as there was insufficient evidence to support a first-degree murder charge. First, to the extent that Petitioner relies upon state law to support this argument, he fails to state a claim for habeas relief. It is well-settled that habeas relief may not be granted for alleged violations of state law. *See Estelle, supra*, 502 U.S. at 67-68; *see also Shacks v. Tessmer*, 2001 WL 523533, *6 (6th Cir. May 8, 2001) (unpublished) (finding no merit in petitioner's claim that the trial court erred in denying his motion for directed verdict of acquittal on first-degree murder charge based upon alleged state law violations).

Second, clearly established Supreme Court law provides only that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable

9

doubt; the Supreme Court has never held that submission of a charge upon which there is insufficient evidence violates a defendant's constitutional rights where the defendant is acquitted of that charge. In *Daniels v. Burke*, the United States Court of Appeals for the Sixth Circuit recognized that "[s]ome courts, under similar facts have concluded that submission to the jury of a charge constituted harmless error in light of petitioner's acquittal on that charge." 83 F.3d 760, 765 n. 4 (6th Cir. 1996) (citing cases); *see also Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001), *but cf. Williams v. Jones*, 231 F. Supp. 2d 586, 593-94 (E.D. Mich. 2002) (relying upon double jeopardy case of *Price v. Georgia*, 398 U.S. 323, 331 (1970)). In *Daniels*, however, the Sixth Circuit found it unnecessary to decide the issue in light of the fact that the evidence of first degree murder was sufficient to submit that charge to the jury. *Id*.

In any event, the Court need not resolve the matter because there was sufficient evidence to support the submission of the first-degree murder charge to the jury. Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *See People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *Id*. Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id*. Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *People v. Dumas*,

454 Mich. 390, 398, 563 N.W.2d 31 (1997). Use of a lethal weapon supports an inference of an intent to kill. *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975).

The Michigan Court of Appeals concluded that the same evidence which supported the second-degree murder conviction provided sufficient evidence to support the first-degree murder charge. *See* discussion *supra*. This Court agrees and concludes that the Michigan Court of Appeals' decision in this regard is neither contrary to nor an unreasonable application of United States Supreme Court precedent. Given the evidence at trial, a reasonable juror could have found that Petitioner had time to take a second look at his actions, that he intended to kill the victim, and that he acted with sufficient premeditation and deliberation. Habeas relief is not warranted on this claim.

B.  Fifth Amendment Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting his police statements in violation of his Fifth Amendment rights where he invoked his right to remain silent. Respondent contends that this claim lacks merit.

The United States Supreme Court has held that the interrogation of a suspect must cease when the suspect invokes his right to remain silent or his right to the assistance of counsel. *See Miranda v. Arizona*, 384 U.S. 436, 474 (1966); *see also Michigan v. Mosley*, 423 U.S. 96, 104 (1975). If an accused wishes to invoke his right to counsel, however, he must do so unambiguously. *See Davis v. United States*, 512 U.S. 452, 458-59 (1994). As the Supreme Court held in *Davis*, "... if a suspect makes reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel our precedents do not require the

cessation of questioning." *Id*. at 459. Although *Davis* concerned the right to counsel, "every circuit that has addressed the issue squarely has concluded that *Davis* applies to both components of Miranda: the right to counsel and the right to remain silent," *Bui v. DiPaola*, 170 F.3d 232, 239 (1st Cir. 1999) (collecting cases), including the United States Court of Appeals for the Sixth Circuit. *See United States v. Hurst*, 228 F.3d 751, 759-60 (6th Cir. 2000) (ruling that a suspect's invocation of the right to remain silent must be unequivocal to require that police questioning cease); *see also United States v. Hicks*, 967 F. Supp. 242, 249-50 (E.D. Mich. 1997) (Rosen, J.)

In this case, the Michigan Court of Appeals denied relief on Petitioner's Fifth Amendment claim, stating:

> Defendant also argues that the trial court should have suppressed his statement to police because the police continued to question him after he declined to answer questions about the stabbing. We disagree. A "person in custody can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation." *People v. Adams*, 245 Mich App 226, 230-231; 627 NW2d 623 (2001). Contrary to defendant's argument, however, defendant did not unambiguously restrict the questioning. He simply responded to some questions by saying, "I do not want to answer at this time," and did not invoke his right to remain silent or to counsel. We find no error.

*Calderon-Hernandez*, 2004 WL 250230 at *1.

This determination is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record does not establish that Petitioner clearly and unequivocally invoked his right to remain silent after the police advised him of his *Miranda* rights. The record shows that Petitioner stated, "I do not want to answer at this time," in response to certain questions asked by the police officer, but continued to respond to other questions. He did not state that he was refusing to answer all questions or declare that he was

12

invoking his right to remain silent during the interrogation. "The mere refusal to answer or respond to a question, without more, does not constitute an assertion or reassertion of the right to silence." *Burton v. Bock*, 320 F. Supp.2d 582, 591 (E.D. Mich. 2004) (Lawson, J.); *see also Hurst*, 228 F.3d at 759-60 (suspect's refusal to answer question about stolen firearms was not a clear and unequivocal assertion of the right to remain silent in response to subsequent questions). Because Petitioner did not unequivocally invoke his right to silence, the trial court did not err in admitting his police statement. Habeas relief is not warranted on this claim.

    C.    <u>Prosecutorial Misconduct Claims</u>

Lastly, Petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by vouching for the victim's spouse and by disparaging him during closing arguments by calling him liar. Respondent contends that these claims are barred by procedural default.

The Court agrees with Respondent that these claims are barred by procedural default. Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991). In *Wainwright*, the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85.

In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar

13

consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In dismissing these prosecutorial misconduct claims, the court relied upon a state procedural bar – Petitioner's failure to timely object to the alleged improper remarks at trial. *See Calderon-Hernandez*, 2004 WL 2881765 at *1. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied these claims based upon Petitioner's failure to timely object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to

14

federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither alleges nor establishes cause to excuse his default. The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. His prosecutorial misconduct claims are thus barred by procedural default and do not warrant habeas relief.

**V.     Conclusion**

Having reviewed the record, this Court concludes that the state courts' denial of relief in this case is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. Petitioner is not entitled to federal habeas relief on the claims contained in his petition. His petition must therefore be denied.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*. at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to each of his claims and has failed to show that reasonable jurists would debate whether the Court was correct in its procedural ruling as to his defaulted claim. A certificate of appealability is not warranted. The Court further concludes that Petitioner should not be granted leave to proceed on appeal *in forma*

*pauperis* as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed on appeal *in forma pauperis* is **DENIED**.


\_\_\_s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
UNITED STATES DISTRICT JUDGE

DATED: November 27, 2007


I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

s/Carol Mullins
Case Manager to Chief Judge Friedman